IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALLIN FRAWLEY, on behalf of himself and all others similarly situated, | § § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:23-cv-2197-L |
| NEXSTAR MEDIA GROUP INC, | § § | |
| Defendant. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendant Nexstar Media Group, Inc., ("Nexstar") filed a Motion to Dismiss for Failure to State a Claim, *see* Dkt. No. 15, which United States District Judge Sam A. Lindsay has referred to the undersigned United States magistrate judge for hearing, if necessary, and proposed findings and recommendations, *see* Dkt. No. 19.

Plaintiff Allin Frawley filed a response, *see* Dkt. No. 20, and Nexstar filed a reply, *see* Dkt. No. 24.

For the reasons explained below, the Court should deny Nexstar's Motion to Dismiss [Dkt. No. 15].

## Background

This case concerns an alleged violation of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA").

Plaintiff Allin Frawley alleges that he registered for a digital subscription with *The Hill*, which owns the political news website *TheHill.com*. *See* Dkt. No. 1 at 4, 7.

-1-

"To register for *The Hill*, users sign up for an online newsletter. … [U]sers provide their personal information, including but not limited to their name, email address, and zip code." *Id.* at 7. Frawley alleges that he "has used his *The Hill* digital subscription to view Video Media through *The Hill* website and/or App while logged into his Facebook account." *Id.* at 4.

Frawley states that Nexstar installed a Facebook pixel and Conversion AI in *The Hill* website that automatically disseminates users' personal viewing information to third parties, such as Facebook, without the user's consent. *See id.* at 3, 8, 10, 13. The personal viewing information submitted includes "the computer file of the video" the user viewed and "corresponding URL," and the user's Facebook ID. *Id.* at 1, 14. Frawley believes that Nexstar no longer uses this pixel. *See id.* at 1 n.1.

Frawley brings this class action lawsuit on behalf of himself and "[a]ll persons in the United States with a digital subscription to an online website owned and/or operated by Defendant that had their Personal Viewing Information disclosed to Facebook by Defendant." *Id.* at 19. Frawley seeks an order declaring Defendant's conduct violates the VPPA, statutory damages under the VPPA, punitive damages, prejudgment interest, an order or restitution, injunctive relief, and attorneys' fees and costs. *See id.* at 24.

## Legal Standards

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of*

*Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing Fed. R. Civ. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346. That rationale has even more force in this case, as the Court "must construe the pleadings of pro se litigants liberally." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys.*

*Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

## Analysis

The VPPA states that "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider shall be liable to the aggrieved person for the relief provided in subsection (d)." 18 U.S.C. § 2710(b)(1).

Nexstar states that Frawley has failed to state a claim under the VPPA for five different reasons:

1) Frawley "is not a 'consumer' as defined by the VPPA,"

2) Frawley has not alleged that "any specific video content was disclosed,"

3) Frawley "concedes that Nexstar did not disclose his identity,"

4) Frawley has not pled "any 'connection between' his identity and any videos he may have viewed," and

5) Frawley does not allege "Nexstar made any disclosure 'knowingly'" as defined by the VPPA.

*See* Dkt. No. 16 at 5, 10, 12, 14.

I.   <u>The Court should consider the exhibits attached to the Motion to Dismiss.</u>

The Court must determine if Nexstar's exhibits can be properly considered on a motion to dismiss or if they should be excluded. If the Court considers matters that are outside the pleading on a motion to dismiss, "the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d).

Nexstar attaches two different articles from *The Hill* website – "Journalist Zaid Jilani warns media against 'Covid-19 grave dancing'" and "Poll: 71 percent support Biden's omicron travel ban" to support their argument that "not all URLs on the TheHill.com contain reference to video content that may be on the webpage." Dkt. No. 16 at 11; Dkt. No. 17, Ex. A & Ex. B. Nexstar argues the Court can take judicial notice of Appendix B. *See* Dkt. No. 16 at 11.

Courts have disagreed over whether it is appropriate to take judicial notice of commercial websites. *See Columbare v. Sw. Airlines, Co.,* No. 3:21-cv-297-B-BK, 2023 WL 406439, at *4 (N.D. Tex. Jan. 10, 2023) ("Courts have taken judicial notice of publicly available information on a company's official website." (collecting cases) (cleaned up)); *cf. Engert v. Quincy Bioscience, LLC*, No. 1:19-cv-183-LY, 2020 WL 504660, at *4 (W.D. Tex. Jan. 9, 2020) ("For purposes of a motion to dismiss, however, matters of public record do not include all documents which may be accessible to the public.' In addition, public records are typically 'government-provided records' and 'a commercial website is not a public record.'" (internal citations omitted) (cleaned up)).

Because Frawley does not dispute the accuracy of the existence of the website article, the Court should take judicial notice of the existence of the article on *TheHill.com*. *See* Dkt. No. 10.

While Frawley does not make the same argument regarding Appendix A, the reasoning that allows the court to take judicial notice of Appendix B applies also to Appendix A. And so, the Court should take judicial notice of Appendix A.

II.    <u>Frawley has alleged he is a "consumer" as required by the VPPA.</u>

The VPPA defines consumer as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

At issue is whether Frawley can be considered a "subscriber," as neither party argues he is a purchaser or renter as defined by the VPPA. *See* Dkt. No. 1 at 22-23; Dkt. No. 16 at 1.

Nexstar argues that Frawley does not qualify as a subscriber because he has only signed up for free newsletters from *The Hill*, and so has not "provide[d] anything to *The Hill* in exchange for access to any video content." Dkt. No. 16 at 7 (emphasis removed). Nexstar asks the Court to take the view that a subscription to newsletters, such as Frawley alleges, is not a subscription to audio visual materials, which is implicitly required by the VPAA. *See id.* Nexstar also applies these same arguments to Frawley's use of *The Hill* app. *See id.* at 6.

Frawley asserts that he has provided personal information in exchange for a subscription to "a digital newsletter that provides access to video content," making him a subscriber under the VPPA. Dkt. No. 20 at 6. While Frawley disagrees that the Court should adopt the reasoning that one must subscribe to audio visual materials, he argues that his complaint sufficiently alleges he has subscribed to audio visual materials regardless. *See id.*

The United States Court of Appeals for the Fifth Circuit has not addressed what qualifies as a subscriber under the VPPA, but other circuit courts have examined this issue. The United States District Court for the Western District of Texas recently explained the prevailing views, stating that

> [c]ourts have reached differing definitions of what it means to "subscribe" within the meaning of the VPPA. On the one hand, the Eleventh Circuit held that a plaintiff who merely downloaded an app to watch video clips was not a "subscriber" within the meaning of the VPPA, reasoning that "'subscription' involves some type of commitment, relationship, or association (financial or otherwise) between a person and an entity," such as "payment, registration, commitment, delivery, expressed association, and/or access to restricted content." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1256 (11th Cir. 2015) (citation omitted). In *Ellis*, the court stated that a person who "is free to delete the app without consequences whenever he likes, and never access its content

-8-

again" is not a subscriber under the VPPA, noting that "downloading [ ] an app, we think, is the equivalent of adding a particular website to one's Internet browser as a favorite, allowing quicker access to the website's content." *Id.* at 1257. However, the *Ellis* court stated that "payment is not a necessary element of subscription." *Id.* at 1256.

On the other hand, the First Circuit appears to require only consideration from the alleged subscriber in the form of providing personal information. *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 487 (1st Cir. 2016). The First Circuit held that merely providing some personal identifying information could constitute the "consideration" necessary for a "subscription." *Id.*

*Brown v. Learfield Commc'ns, LLC*, No. 1:23-CV-00374-DAE, 2024 WL 1477636, at *5 (W.D. Tex. Jan. 29, 2024).

In applying their factor test, the *Ellis* court found "downloading an app for free and using it to view content at no cost is not enough to make a user of the app a 'subscriber' under the VPPA, as there is no ongoing commitment or relationship between the user and the entity which owns and operates the app. Importantly, such a user is free to delete the app without consequences whenever he likes, and never access its content again." *Ellis*, 803 F.3d at 1257.

Following the *Ellis* decision, courts applying the factor test have found a plaintiff who signs up for free newsletter subscriptions – like the one Frawley alleges – can qualify as a subscriber when the plaintiff provided personal information to register for an account with the defendant, receiving in return "periodic newsletters and emails from Defendant" and access to restricted content on the site. *Harris v. Pub. Broad. Serv.*, 662 F. Supp. 3d 1327, 1331 (N.D. Ga. 2023); *accord Lebakken v. WebMD, LLC*, 640 F. Supp. 3d 1335, 1340 (N.D. Ga. 2022) (finding that when the plaintiff created an account with the defendant and exchanged her email address to

receive a newsletter, the plaintiff sufficiently claimed she was a subscriber under the VPPA); *cf. Edwards v. Learfield Commc'ns, LLC*, No. 1:23-CV-65-AW-MAF, 2023 WL 8544765, at *6 (N.D. Fla. Oct. 6, 2023) (Applying the *Ellis* factors, plaintiffs did not allege they were subscribers when they provided personal information to sign up for free email newsletters that were "cancellable without consequences… and provide[d] no exclusive benefits." The Court also reasoned the plaintiffs were not subscribers because the plaintiffs did not create an account with the defendant, and "[t]he newsletters linked to videos on [Defendant's website] itself, where Plaintiffs watched them. Anyone can watch from the [defendant's] [w]ebsite, regardless of whether they signed up for the newsletter.").

Some courts have further defined consumer by reasoning that "goods or services from a video tape service provider" necessarily implies consumption of "audio visual materials, not just any products or services from a video tape services provider," relying on a contextual reading of the statute and the legislative history of the VPPA. *Brown*, 2024 WL 1477636, at *7 (describing the holding of *Carter v. Scripps Networks, LLC*, 670 F.Supp.3d 90, 98-99 (S.D.N.Y. 2023)).

The court in *Carter* found that plaintiffs who subscribed to *hgtv.com* newsletters where the majority of the newsletter content "linked back to articles and videos on hgtv.com" were not subscribers under the VPPA because "there was no assertion that a newsletter subscription was required to access those videos, functioned as a login, or gave newsletter subscribers extra benefits as viewers. Plaintiffs were free to watch or not watch hgtv.com videos without any type of

-10-

obligation, no different than any of the other 9.9 million monthly visitors to the site." *Carter*, 670 F.Supp.3d at 99. The plaintiffs "were subscribers to newsletters, not subscribers to audio visual materials." *Id.*

The undersigned finds it persuasive that the only district court in the Fifth Circuit to address *Carter*'s interpretation adopted *Carter*'s reasoning, determining that the plaintiff did not allege he was a subscriber because the newsletter "link[ed] to videos on the website which the public can access without signing up for the newsletter." *Brown*, 2024 WL 1477636, at *7. The Court emphasized the user did not need to log in to watch the video and that the video content was not exclusive to subscribers. *See id.* at *9. And the Court noted that "[a] growing body of case law continues to adopt *Carter*." *Id.* at *8 (collecting cases).

But, even if the Court applies *Carter's* reasoning to the current case and requires some connection between the newsletter and videos viewed, Frawley argues that he has still stated a claim under the VPPA because he has alleged he is a subscriber to audio visual materials. *See* Dkt. No. 20 at 7. Although the complaint does not explicitly allege, nor does Frawley conclusively confirm, that the subscription to *The Hill* provided additional or exclusive access to audio visual materials, Frawley points to his allegation that, "[a]fter becoming a digital subscriber, viewers have access to a variety of *The Hill* Video Media on Defendant's digital platform" as stating a claim he subscribed to audio visual materials. Dkt. No. 1 at 7; *see id.*

While disagreeing with the narrower construction of goods and services articulated by *Carter*, the *Harris* court found a plaintiff's allegation that *"[a]fter*

*becoming a digital subscriber*, viewers have access to a variety of Pbs.[org]'s Video and Audio Media on Defendant's digital platform" was sufficient to allege that the plaintiff was a subscriber to video services. *Harris*, 662 F. Supp. 3d at 1333. The *Harris* court explained that,

> given Plaintiff's qualifier, the Court understands this statement to allege Plaintiff's subscription and creation of a digital account gave her access to video content. To the extent the allegation is ambiguous, the Court construes it in the light most favorable to Plaintiff. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). If discovery reveals Plaintiff's account was wholly unrelated to Defendant's video content, the Court will re-visit this issue on summary judgment.

*Id.*

Nexstar attempts to distinguish Frawley's subscription from the facts in *Harris* by highlighting that the "*Harris* plaintiff alleged that she could 'log[] into' her account with PBS.com to watch videos." Dkt. No. 24 at 4 (citations omitted). But Frawley does allege an element of "logging in," stating that "once a digital subscriber signs in and watches *The Hill* video media, the digital subscriber is not provided with any notification that their Personal Viewing Information is being shared." Dkt. No. 1 at 7.

And so, even if the undersigned applies *Carter's* reasoning, construing the allegations in the light most favorable to the plaintiff (as the Court did in *Harris*), Frawley has sufficiently alleged that he is a subscriber under the VPPA at this pleadings stage.

III.   <u>Frawley has alleged specific video content was disclosed.</u>

The VPPA identifies personally identifiable information ("PII") as "includ[ing] information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710 (a)(3).

Nexstar argues that Frawley has not "identif[ied] any specific videos that he viewed, when he viewed them, or how he viewed them" and that the information allegedly disclosed by Nexstar does not contain any reference to specific video content watched. Dkt. No. 16 at 10.

Frawley responds that it is not necessary to identify specific videos watched and that he has alleged specific video content disclosed by Nexstar. *See* Dkt. No. 20 at 8-11.

Frawley is not required to allege the specific videos he watched to state a claim under the VPPA. *See Sellers v. Bleacher Rep., Inc.*, No. 23-CV-00368-SI, 2023 WL 4850180, at *3 (N.D. Cal. July 28, 2023) (stating "Bleacher Report's assertion that plaintiff must name the videos he obtained relies entirely on *Martin v. Meredith Corp.*, No. 22CV4776 (DLC), 2023 WL 2118074, at *4 (S.D.N.Y. Feb. 17, 2023)" but finding that allegations "Bleacher Report uses the Facebook pixel to disclose 'the content name of the video the digital subscriber watched, the URL, and the digital subscribers' FID…'" were sufficient to state a claim).

Nexstar next argues that not all URLs from *The Hill.com* transmit the title of the video, and, so, the pleadings are insufficient to show a person obtained video materials. *See* Dkt. No. 16 at 10. Nexstar attaches an article to their motion to

dismiss, demonstrating that the URLs do not always contain the video title, and that the URL may represent a webpage with written and video content. *See id.* at 11.

Nexstar relies on *Martin v. Meridith Corp.*, which states that providing a URL of a webpage "which may or may not include a video does not show that a person requested or obtained specific video materials or services. And even for webpages including a video, sending the URL does not identify a person as having requested or obtained the video on that page since the person may instead have merely reviewed an article on the page or opened the page and done nothing more." *Martin v. Meredith Corp.*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023) (cleaned up) ("Thus, simply disclosing the name of a webpage and an associated Facebook ID leaves off essential information for a VPPA claim, including at least: (1) whether the webpage contains a video; (2) if so, the name of the 'specific video materials' on the page; (3) whether there are multiple videos on the page and, if so, which "specific video materials" were requested or obtained by the website visitor; and (4) whether the website visitor "requested or obtained" any videos at all, or instead merely read an article on the webpage.").

Frawley's complaint states that Nexstar "knowingly and readily provides" an FID, "video content name," and URL to Facebook. Dkt. No. 1 at 13. And Frawley explains that "[t]he second line of text, 'ev: PageView,' identifies and categorizes which actions the user took on the webpage ('ev:' is an abbreviation for event, and 'PageView' is the type of event). Thus, this identifies the user as having viewed the particular webpage and video. … The remaining lines of text: (1) identify the digital subscriber as having viewed or requested specific video content ('journalize-zaid-

hilani-warns-media-against-covid-19-grave-dancing'); (2) reveal the title of they viewed or requested from Defendant; and (3) reveal the digital subscriber's identity (represented as "c_user" and partially redacted in the image above)." *Id.* at 17.

While the undersigned acknowledges that the URL may not sufficiently identify the video, Frawley has stated in his complaint that the video title and URL are transmitted to the third party. *See e.g.*, *Golden v. NBCUniversal Media, LLC*, 688 F. Supp. 3d 150, 160 (S.D.N.Y. 2023) ("Insofar as the statutory definition of PII includes that the identified person "requested or obtained specific video materials or services," 18 U.S.C. § 2710(a)(3), the FAC also adequately alleges that Today.com disclosed "specific video materials"—to wit, each video's URL and name.") (collecting cases); *see also Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 721 (N.D. Cal. 2023) ("[P]laintiffs cite numerous cases to the contrary finding that 'electronic disclosures of a person's video-viewing history, even if not explicit, can violate the VPPA.'") (quoting *Feldman v. Star Trib. Media Co. LLC*, No. 22-CV-1731 (ECT/TNL), 659 F.Supp.3d 1006, 1021-22 (D. Minn. Mar. 7, 2023)).

And courts have found that "[w]hether a URL sufficiently identifies a video is ultimately a factual question that should not be resolved on motion to dismiss." *Ghanaat*, 689 F. Supp. 3d at 721.

Some courts have also rejected Nexstar's argument that a plaintiff fails to state a claim because the plaintiff may have not watched the video, even if the URL and the video name are disclosed. *See* Dkt. No. 24 at 6; *Golden*, 688 F. Supp. 3d at 160-61 ("NBCU faults the FAC for not alleging that Today.com disclosed to Facebook how

the users interacted with Today.com's videos—for example, whether the user watched or merely accessed the video. But NBCU has not identified any statutory text or case authority making liability turn on whether the plaintiff whose video access was disclosed had actually watched the video(s) at issue. It would be surprising if the VPPA required such for liability.") (citations omitted).

And, so, the Court should find that Frawley has sufficiently alleged Nexstar disclosed specific video content at this stage in the pleadings.

IV.   <u>Frawley sufficiently alleged that Nexstar disclosed his identity.</u>

Nexstar argues that Frawley's own browser – not Nexstar – disclosed any potential PII. *See* Dkt. No. 16 at 12. Nexstar points to Frawley's complaint, which alleges that "[t]hird parties, like Facebook, place third-party cookies in the web browsers of users logged into their services." Dkt. No. 1 at 11.

Frawley responds that it is Nexstar's installation of the Facebook pixel that transmits the PII and, so, he has sufficiently alleged Nexstar has transmitted the PII. *See* Dkt. No. 20 at 12-13.

Other courts addressing this issue have found that a plaintiff arguing its browser transmits the PII "fails to acknowledge that, '[b]y installing the [Facebook Tracking] Pixel, Defendant opened a digital door and invited Facebook to enter that door and extract information from within.'" *Aldana v. GameStop, Inc.*, No. 22-CV-7063-LTS, 2024 WL 708589, at *9 (S.D.N.Y. Feb. 21, 2024), *motion to certify appeal denied*, 2024 WL 3104345 (S.D.N.Y. June 24, 2024).

Frawley has alleged in his complaint that "Defendant utilizes Facebook's Business Tools and intentionally installed the Pixel and Conversions API on its website to track and transmit their Personal Viewing Information to third parties." Dkt. No. 1 at 14.

As in these persuasive decisions of other courts, pleading Nexstar's installation of the pixel is sufficient to state a claim under the VPPA at this stage in the pleadings.

V.   <u>Frawley has alleged a sufficient connection between the video and the PII.</u>

Nexstar states that there is not a sufficient connection between Frawley's identity and the videos he viewed and that, "at most, he speculates that Facebook might be able to combine the FID information transmitted by the Facebook cookie through Plaintiff's browser with the URL for webpages he visited that were transmitted through the Facebook pixel." Dkt. No. 16 at 13.

Frawley responds that Nexstar's disclosure of both the URL (containing a video title) combined with the c_user cookie containing the Facebook ID adequately identifies the user. Dkt. No. 20 at 13-14.

The VPPA defines personally identifiable information as including information "which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). While there is not a uniform definition of what qualifies as personally identifiable information, "the majority of the courts to address this issue" have found PII to mean "the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 91

(S.D.N.Y. 2022). But courts have indicated "that providing a third party with PII that is legible to that specific third party is sufficient to state a claim under the VPPA." *Aldana*, 2024 WL 708589, at *8 (cleaned up). And "[c]ourts have uniformly held Facebook IDs to constitute PII under the VPPA, particularly where … the plaintiff alleges that her Facebook ID was disclosed alongside the viewed video's URL and name." *Golden*, 688 F. Supp. 3d at 159.

Even disregarding the allegations around potentially using Conversions API, as Frawley has alleged that the Facebook ID was disclosed alongside a URL containing a video title, Frawley has sufficiently stated a claim under the VPPA at this stage.

VI.   <u>Frawley sufficiently alleges Nexstar knowingly disclosed his PII.</u>

Nexstar contends that Frawley has not alleged that Nexstar disclosed personally identifiable information knowingly because Nexstar only "had knowledge of the 'functionality of the pixel'" and did not know that Frawley had a Facebook account, was logged into his Facebook account when he accessed *The Hill*, allowed cookies that disclosed his FID to Facebook, or that "Facebook would pair [Frawley's] FID with other information." Dkt. No. 16 at 14-15. Nexstar also argues that it could have not disclosed PII knowingly because it did not disclose Frawley's PII at all – the browser did. *See* Dkt. No. 24 at 9-10.

Frawley responds that he has made sufficient factual allegations in his complaint to claim that Nexstar disclosed the PII knowingly. *See* Dkt. No. 17 at 16-18.

To state a claim under the VPPA, the plaintiff must allege that "a video tape service provider … knowingly" disclosed personally identifiable information. 18 U.S.C. § 2710(b)(1). Courts have found that "'knowingly' "connotes actual knowledge. It is not enough … that a disclosure be merely 'voluntary' in the minimal sense of the defendant's being 'aware of what he or she is doing and ... not act[ing] because of some mistake or accident.' … 'Knowingly' means consciousness of transmitting the private information. It does not merely mean transmitting the code.'" *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (cleaned up) (citations omitted).

And "[m]any other district courts have simply found that where a complaint alleges knowing disclosure under the VPPA, a motion to dismiss will not succeed." *Li v. Georges Media Grp. LLC*, No. CV 23-1117, 2023 WL 7280519, at *4 (E.D. La. Nov. 3, 2023).

Courts have found knowledge to be sufficiently alleged when a plaintiff states that the defendant disclosed information (such as the URL and video name), knew that multiple types of information were simultaneously disclosed, and knew that the "'combined data identifies Website users and the videos they watched.'" *See id.* And if a "Defendant installed the Facebook pixel knowing it transmits [personally identifiable] information, the knowledge element of the VPPA is satisfied." *Harris*, 662 F. Supp. 3d at 1336. It is not necessary to plead that Defendant "knew that each individual user had a Facebook account, nor whether Facebook, in fact, linked such information to particular accounts." *Adams v. Am.'s Test Kitchen*, LP, 680 F. Supp. 3d 31, 43 (D. Mass. 2023).

Frawley alleges that "Defendant utilizes Facebook's Business Tools and intentionally installed the Pixel and Conversions API on its website to track and transmit their Personal Viewing Information to third parties" and "[a]t all relevant times, Defendant knew that the Facebook pixel disclosed Personal Viewing Information to Facebook." Dkt. No. 1 at 13, 14.

This is sufficient to state a claim Nexstar knowingly disclosed Frawley's personally identifiable information.

VII.   Request for Leave to Amend

Frawley requests that the Court grant him leave to amend under Fed. R. Civ. P. 15(a) "[i]f the Court grants Defendant's motion to dismiss, in whole or in part." Dkt. No. 20 at 18.

As the undersigned recommends the Court should deny Nexstar's Motion to Dismiss, the undersigned will not address this request at this time.

## Recommendation

For the reasons stated above, the Court should deny Nexstar's Motion to Dismiss [Dkt. No. 15].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and

specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

      DATED: July 22, 2024

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE